|   |   |
|---|---|
| GRAHAM DE-LUIS-CONTI, | No. C 04-4110 SBA (pr) |
| Plaintiff, | **ORDER OF SERVICE AND ADDRESSING PENDING MOTIONS** |
| v. | |
| ARNOLD SCHWARZENEGGER, et al. | (Docket nos. 2, 3, 6, 7, 9, 11) |
| Defendants. | |

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

## BACKGROUND

Plaintiff Graham De-Luis-Conti, an inmate of Salinas Valley State Prison, California, filed a civil rights action pursuant to 42 U.S.C. § 1983. He also filed an application for in forma pauperis status.

Plaintiff alleges that he is a British citizen. Since Plaintiff has been incarcerated in 2001, he alleges that he was never informed of his rights to be transferred to a prison in his country of origin under California Penal Code §§ 2912, 5028(a).

California Penal Code § 2912 is entitled "Foreign Prisoner Transfer Program; notification to foreign born inmate concerning eligibility to serve term of imprisonment in nation of citizenship." Section 2912(a) states:

> Under its Foreign Prisoner Transfer Program, the Board of Prison Terms shall devise a method of notifying each foreign born inmate in a prison or reception operated by the Department of Corrections that he or she may be eligible to serve his or her term of imprisonment in his or her nation of citizenship as provided in federal treaties.[1]

Cal. Penal Code § 2912.

California Penal Code § 5028 is entitled "Foreign nationals; transfers to current or former nation of origin; notifying foreign consulates; procedures to process applications." Section

---

[1] 18 U.S.C. § 4100(b), the implementing legislation which authorizes the transfer of inmates to or from foreign countries, states in part: "An offender may be transferred from the United States pursuant to this chapter only to a country of which the offender is a citizen or national. Only an offender who is a citizen or national of the United States may be transferred to the United States."

5028(a) states:

> Upon the entry of any person who is currently or previously a foreign national into a facility operated by the Department of Corrections, the Director of Corrections shall inform the person that he or she may apply to be transferred to serve the remainder of his or her prison term in his or her current or former nation of citizenship. The director shall inform the person that he or she may contact his or her consulate and shall ensure that if notification is requested by the inmate, that the inmate's nearest consulate or embassy is notified without delay of his or her incarceration.

Cal. Penal Code § 5028(a).

Plaintiff alleges that he was unaware of any treaty which allows for a transfer to his country of origin until the British consulate mailed him the necessary paperwork to apply for the transfer. He claims that the Director of the California Department of Corrections ("CDC") never informed him of such treaty transfer rights pursuant to California Penal Code § 5028(a). Plaintiff also alleges that he spoke to other foreign inmates, who claim that they were never informed about their rights to transfer to their country of origin.

Plaintiff alleges that he applied for a foreign prisoner transfer to his country of origin, but that Board of Prison Terms ("BPT") Chairperson Carol A. Daly denied his application on September 4, 2003, alleging that Plaintiff did not meet the requirements for the transfer. Plaintiff claims "[t]he denial was based on [his] criminal charges, and that he [was] enrolled [and] assigned to a mental health program, furthermore, . . . [Plaintiff] was ordered to pay $5,000 [in] restitution." (Compl. at 7.) Plaintiff states that the basis of the denial was meritless because: 1) his criminal charges do not effect the prison transfer program; 2) he is not assigned to any mental health program; and    3) he owes no restitution because a restitution hearing was never scheduled.

Plaintiff has filed this action as a class action suit on behalf of all foreign prisoners seeking prison transfer to their own country of origin. (See Compl. at 3.) He alleges violations of state law, Federal law, the Constitution of the United States of America, and International Treaties.

Plaintiff names Chairperson Daly, Governor Arnold Schwarzenegger, and the Director of

CDC as Defendants in this action. He alleges that the denial of his application for a foreign prisoner transfer violates his constitutional rights and constitutes cruel and unusual punishment. He also alleges that Chairperson Daly "has with deliberate indifference denied applications for prison transfer based on the grounds that honoring the prison transfer treaty would deny the state of Federal funding," and that she failed in her duty to ensure that the CDC enforced California Penal Codes §§ 2912 and 5028(a). (Compl. at 5.) He further alleges that Governor Schwarzenegger failed in his duty to ensure that state law, Federal law and International Treaties were carried out, specifically the laws and treaties related to the transfer of foreign prisoners back to their countries of origin.

## DISCUSSION

**A.    Standard of Review**

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. See id. § 1915A(b)(1),(2). Pro se pleadings must, however, be liberally construed. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

**B.    Class Action**

Plaintiff seeks to represent himself in this litigation along with all foreign prisoners seeking prison transfers to their own country of origin.

It is well-established that pro se prisoner plaintiffs are not adequate class representatives able to fairly represent and adequately protect the interests of a purported class. See Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975) (pro se prisoner could not maintain class action on

1  behalf of other prisoners); <u>see</u> <u>also</u> <u>Russell v. United States</u>, 308 F.2d 78, 79 (9th Cir. 1962) ("a
2  litigant appearing <u>in</u> <u>propria</u> <u>persona</u> has no authority to represent anyone other than himself").
3  Therefore, the instant action cannot proceed as a class action.  Plaintiff is limited to asserting
4  claims for violations of his own civil rights, and he may not litigate claims on behalf of other
5  inmates.
6       Accordingly, Plaintiff's attempt to bring a class action is DISMISSED because he may not
7  proceed in this action on behalf of anyone but himself.
8  **C.     Eleventh Amendment Immunity**
9       Plaintiff's complaint includes a claim for relief which seeks to hold Governor
10 Schwarzenegger liable for actions taken in his official capacity as an overseer of the State prison
11 system.  Plaintiff alleges that Governor Schwarzenegger "has failed in his duty as governor of
12 California to ensure that State laws, Federal laws and international treaties have been carried
13 out." (Compl. at 3.)  Plaintiff further alleges that Governor Schwarzenegger "has failed in his
14 duty to ensure appointed officials carry out their duties, obligations, such as [Chairperson Daly],
15 who's [sic] responsibility is to ensure such treaties are honored."  (<u>Id.</u> at 5.)
16      The Eleventh Amendment bars from the federal courts suits against a state by its own
17 citizens, citizens of another state or citizens or subjects of any foreign state.  <u>See</u> <u>Atascadero</u>
18 <u>State Hosp. v. Scanlon</u>, 473 U.S. 234, 241 (1985); <u>Alabama v. Pugh</u>, 438 U.S. 781, 782 (1978);
19 <u>Edelman v. Jordan</u>, 415 U.S. 651, 676-77 (1974).  Unless a state has waived its Eleventh
20 Amendment immunity or Congress has overridden it, a state cannot be sued regardless of the
21 relief sought.  <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 n.14 (1985) (citing <u>Pugh</u>, 438 U.S. at
22 782).  This Eleventh Amendment immunity extends to state officials sued in their official
23 capacities.  <u>See</u> <u>Graham</u>, 472 U.S. at 169-70.  A suit will be barred under the Eleventh
24 Amendment if the judgment sought would expend itself on the public treasury or domain or
25 interfere with the public administration, or if the effect of the judgment would be to restrain the
26 State from acting or to compel it to act.  <u>See id.</u>  A federal court may not entertain a suit against a
27 State official that in essence seeks damages from the public treasury nor may it order State
28

officials to conform their conduct with State law.  See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 97-121 (1984); Confederated Tribes & Bands v. Locke, 176 F.3d 467, 469 (9th Cir. 1999) (damages claim against governor in his official capacity barred by Eleventh Amendment).  Moreover, a request for prospective injunctive relief which requires the State to provide monetary relief for past behavior is in substance a claim for retroactive relief barred by the Eleventh Amendment.  See Native Village of Noatak v. Blatchford, 38 F.3d 1505, 1512 (9th Cir. 1994).

Plaintiff seeks to compel Governor Schwarzenegger to take future actions in his official capacity to comply with State law by "ensur[ing] that every foreign national incarcerated is informed of their right to prison transfer as states in the prison transfer treaty program as well as in the California Penal Codes." (Compl. at 13.)  This claim is barred by the Eleventh Amendment.

Accordingly, Plaintiff's claim for relief against Governor Schwarzenegger is DISMISSED with prejudice.

**D.**     **Eighth Amendment Violation**

Plaintiff claims that as a foreign born inmate, he was entitled to be transferred to serve the rest of his sentence at a prison in his country of origin.  He alleges that "the fact that the Governor [and] B.P.T. Chairperson C.A. Daly refuses [sic] and denys [sic] foreign prisoner transfers violated the above named laws and most certainly constitutes cruel and unusual punishment to those who are foreign nationals." (Compl. at 7.)  He claims that he has "no ties to the United States . . . but has strong ties to his [c]ountry of [o]rigin." (Id. at 8.)  He states that all his family members are in Europe, including his wife, daughter, son, siblings, cousins, etc. (Id.)  Therefore, Plaintiff requested to be transferred to serve the rest of his prison sentence at a prison in his country of origin in order to be closer to his family. (Id.)

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones.  See Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the

5

Eighth Amendment. See Helling v. McKinney, 509 U.S. 25, 31 (1993).  In its prohibition of "cruel and unusual punishment," the Eighth Amendment places restraints on prison officials. See Hudson v. McMillian, 503 U.S. 1, 6-7 (1992) (prison officials may not use excessive force against prisoners).  A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, see Farmer, 511 U.S. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, see id. (citing Wilson, 501 U.S. at 297).

The Court finds that it is not "cruel and unusual punishment" for Plaintiff's application for a foreign prisoner transfer to be denied.  Cf. Olim v. Wakinekona, 461 U.S. 238, 244-48 (1983) (prisoners have no constitutional right to incarceration in a particular institution.).  Furthermore, it is not an "objectively, sufficiently serious" deprivation which amounts to "cruel and unusual punishment" for a British citizen, such as Plaintiff, to be incarcerated at a California prison that is not easily accessible to his family.  Cf. Davis v. Carlson, 837 F.2d 1318, 1319 (5th Cir. 1988) (no right to transfer to prison near wife); Moore v. United States Attorney Gen., 473 F.2d 1375, 1376 (5th Cir. 1973) (action to compel confinement near wife and children not cognizable); Beshaw v. Fenton, 635 F.2d 239, 246 (3d Cir. 1980) ("[W]e are aware of no authority suggesting that a transfer to a facility not easily accessible to a prisoner's relatives . . . necessarily implicates liberty interests protected by the Due Process Clause."), cert. denied, 453 U.S. 912 (1981).  Therefore, Plaintiff fails to state a claim for relief under the Eighth Amendment.

Accordingly, Plaintiff's Eighth Amendement claim is DISMISSED with prejudice.

**E.     Claims Regarding Plaintiff's Rights Under International Treaty and Foreign Prisoner Transfer Program**

Plaintiff alleges that Defendants failed in their duty to ensure that state law, Federal law and International Treaties were carried out (specifically, the laws and treaties relating to foreign prisoner transfers) based on: (1) the denial of his application for a foreign prisoner transfer and (2) the CDC's failure to inform him of his rights under the international treaty relating to the Foreign Prisoner Transfer Program.

Plaintiff alleges Chairperson Daly's reasons for denying his application were meritless. However, international treaties, such as the treaty at issue, allow for these transfer decisions to be discretionary and do not create an enforceable right. See Marquez-Ramos v. Reno, 69 F.3d 477, 479 (10th Cir. 1995) ("to the extent a statute vests discretion in a public official, his exercise of that discretion should not be controlled by the judiciary").

Plaintiff claims that since he was incarcerated in 2001, the prison officials never informed him about his rights under the treaty regarding foreign prisoner transfers pursuant to California Penal Code §§ 2912, 5028(a).

Liberally construed, Plaintiff has stated a cognizable claim against Chairperson Daly and the Director of CDC for relief based on the violation of Plaintiff's rights under the foreign prisoner transfer treaty, which were incorporated into California Penal Code §§ 2912 and 5028(a).

**CONCLUSION**

1. Plaintiff's application for in forma pauperis status (docket no. 2) is GRANTED. The total filing fee due is $250.00. The initial partial filing fee due for Plaintiff at this time is $0.00. A copy of this Order and the attached instruction sheet will be sent to Plaintiff, the Prison Account Trust Office, and the Court's Financial Office.

2. Plaintiff's attempt to bring a class action is DISMISSED.

3. Plaintiff's Eighth Amendment claim is DISMISSED with prejudice.

4. The Court finds a COGNIZABLE claim for relief based on the violation of Plaintiff's rights under the foreign prisoner transfer treaty, which were incorporated into California Penal Code §§ 2912 and 5028(a), against BPT Chairperson Carol A. Daly and the Director of CDC.

5. All other claims and defendants are hereby DISMISSED with prejudice from this action.

6. The Clerk of the Court shall issue summons and the United States Marshal shall serve, without prepayment of fees, copies of: the complaint as well as copies of all attachments

1    thereto (docket no. 1) and a copy of this Order upon: **(1) BPT Chairperson Carol A. Daly and**
2    **(2) the Director of CDC**.  The Clerk shall also mail copies of these documents to the Attorney
3    General of the State of California.  Additionally, the Clerk shall serve a copy of this Order on
4    Plaintiff.
5        7.    In order to expedite the resolution of this case, the Court orders as follows:
6        a.    Defendants shall answer the complaint in accordance with the Federal
7    Rules of Civil Procedure.  In addition, no later than **thirty (30) days** from the date their answer is
8    due, Defendants shall file a motion for summary judgment or other dispositive motion.  The
9    motion shall be supported by adequate factual documentation and shall conform in all respects to
10   Federal Rule of Civil Procedure 56.  If Defendants are of the opinion that this case cannot be
11   resolved by summary judgment, they shall so inform the Court prior to the date their summary
12   judgment motion is due.  All papers filed with the Court shall be promptly served on Plaintiff.
13       b.    Plaintiff's opposition to the dispositive motion shall be filed with the Court
14   and served on Defendants no later than **forty-five (45) days** after the date on which Defendants'
15   motion is filed.  The Ninth Circuit has held that the following notice should be given to plaintiffs:

> The defendants have made a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
> Rule 56 tells you what you must do in order to oppose a motion for summary judgment.  Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is,  if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says.  Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in [Defendants'] declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you.  If summary

United States District Court
For the Northern District of California

> judgment is granted in favor of [Defendants], your case will be dismissed and there will be no trial.

See Rand v. Rowland, 154 F.3d 952, 963 (9th Cir. 1998) (en banc).  Plaintiff is advised to read Rule 56 of the Federal Rules of Civil Procedure and Celotex Corp. v. Catrett, 477 U.S. 317 (1986) (party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim).  Plaintiff is cautioned that because he bears the burden of proving his allegations in this case, he must be prepared to produce evidence in support of those allegations when he files his opposition to Defendants' dispositive motion.  Such evidence may include sworn declarations from himself and other witnesses to the incident, and copies of documents authenticated by sworn declaration.  Plaintiff is advised that if he fails to submit declarations contesting the version of the facts contained in Defendants' declarations, Defendants' version may be taken as true and the case may be decided in Defendants' favor without a trial.  Plaintiff will not be able to avoid summary judgment simply by repeating the allegations of his complaint.

        c.     If Defendants wish to file a reply brief, they shall do so no later than **fifteen (15) days** after the date Plaintiff's opposition is filed.

        d.     The motion shall be deemed submitted as of the date the reply brief is due.  No hearing will be held on the motion unless the Court so orders at a later date.

    8.     Discovery may be taken in accordance with the Federal Rules of Civil Procedure.  Leave of Court pursuant to Rule 30(a)(2) is hereby granted to Defendants to depose Plaintiff and any other necessary witnesses confined in prison.

    9.     All communications by Plaintiff with the Court must be served on Defendants, or their counsel once counsel has been designated, by mailing a true copy of the document to Defendants or their counsel.

    10.    It is Plaintiff's responsibility to prosecute this case.  Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion.  Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to

Federal Rule of Civil Procedure 41(b).

11. Extensions of time are not favored, though reasonable extensions will be granted. However, the party making a motion for an extension of time is not relieved from his or her duty to comply with the deadlines set by the Court merely by having made a motion for an extension of time. The party making the motion must still meet the deadlines set by the Court until an order addressing the motion for an extension of time is issued. Any motion for an extension of time must be filed no later than **fifteen (15) days** prior to the deadline sought to be extended.

12. Plaintiff's motion for appointment of counsel (docket no. 3), motion to produce documents (docket no. 6), motions to compel (docket nos. 7, 11) and motion for a hearing regarding motion to compel (docket no. 9) are DENIED without prejudice as premature. Plaintiff may renew these motions after Defendants file a dispositive motion.

IT IS SO ORDERED.

DATED: 9/2/05

SAUNDRA BROWN ARMSTRONG
United States District Judge

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

INSTRUCTIONS FOR PAYMENT OF PRISONER'S FILING FEE

The prisoner shown as the plaintiff or petitioner on the attached order has filed a civil action in forma pauperis in this court and owes to the court a filing fee. Pursuant to 28 U.S.C. § 1915, the fee is to be paid as follows:

>The initial partial filing fee listed on the attached order should be deducted by the prison trust account office from the prisoner's trust account and forwarded to the clerk of the court as the first installment payment on the filing fee. This amount is twenty percent of the greater of (a) the average monthly deposits to the prisoner's account for the 6-month period immediately preceding the filing of the complaint/petition or (b) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint/petition.

>Thereafter, on a monthly basis, 20 percent of the preceding month's income credited to the prisoner's trust account should be deducted and forwarded to the court each time the amount in the account exceeds ten dollars ($10.00). The prison trust account office should continue to do this until the filing fee has been paid in full.

If the prisoner does not have sufficient funds in his/her account to pay the initial partial filing fee, the prison trust account office should forward the available funds, and carry the balance forward each month until the amount is fully paid.

If the prisoner has filed more than one complaint, (s)he is required to pay a filing fee for each case. The trust account office should make the monthly calculations and payments for each case in which it receives an order granting in forma pauperis and these instructions.

**The prisoner's name and case number must be noted on each remittance.** The initial partial filing fee is due within thirty days of the date of the attached order. Checks should be made payable to Clerk, U.S. District Court and sent to Prisoner Accounts Receivable, U.S. District Court, 450 Golden Gate Avenue, Box 36060, San Francisco, CA 94102.

cc:   Plaintiff/Petitioner
      Finance Office